Jim MUELLER; Eileen Nichols; Brenda White; Linda Poe, Petitioners,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, Respondent,

Atlas Environmental Services, Inc.; Atlas Powder Company, Intervenors.

No. 92–2625.

United States Court of Appeals, Eighth Circuit.

Submitted March 16, 1993.

Decided May 25, 1993.

John Edmund Price, Springfield, MO, for appellant.

Russell M. Young, Washington, DC (Brian Grant & James Stevens, on brief), for appellee.

Byron E. Francis, on brief, St. Louis, MO, for intervenor.

Before JOHN R. GIBSON, BOWMAN, and WOLLMAN, Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Jim Mueller, Eileen Nichols, Brenda White, and Linda Poe petition for review of a final order denying review of the Environmental Protection Agency's approval of an incinerator permit. The EPA's Environmental Appeals Board denied the petitioners' request for review without a hearing, the Regional Administrator issued a final permit decision, and the petitioners filed a petition for review in this Court. We deny the petition for review.

In 1989, Atlas Environmental Services, Inc., a wholly-owned subsidiary of Atlas Powder Company, applied to the Missouri Department of Natural Resources for a permit under the Resource Conservation and Recovery Act, 42 U.S.C. §§ 6901–6992k (1988), to build and operate a hazardous waste incinerator and related structures. In compliance with the Missouri Department and EPA's Memorandum of Agreement, Atlas filed only one permit application (over 1,000 pages) to obtain a joint permit from the Missouri Department and EPA. The EPA issued a portion of the permit for a storage/feed handling building, where limited quantities of waste would be stored and prepared for incineration. The EPA permit also imposes corrective action requirements on the entire Atlas Powder Company facility. The Missouri Department of Natural Resources issued the rest of the permit, including the operating requirements for the incinerator.

The petition for review before us involves only the EPA's portion of the permit.[1] The petitioners argue: (1) that the EPA permit is based on clearly erroneous findings of fact and conclusions of law because it inappropriately incorporates provisions of the Missouri permit, the Missouri permit is not binding on the incinerator's landowner, and the EPA's incorporation refers to incorrect sections of the Missouri permit; (2) that the EPA's determination that there was sufficient geological and hydrological information is based on clearly erroneous findings of fact and conclu-

sions of law because (a) Atlas submitted only preliminary studies, (b) there is no evidence that storage/feed handling building will comply with federal performance standards, (c) the environmental report contains inapplicable information and is not a detailed "geological assessment," and (d) there is no evidence that construction design details or specifications have been submitted to the EPA; (3) that the EPA could not sufficiently evaluate the quality of existing ground water based on the information it had; and (4) that the permit application itself identifies risk to human health.

■ We review the EPA's issuance of a permit only to determine if it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 6976(b) (1988); 5 U.S.C. § 706(2)(A) (1988). As long as the EPA considered all of the relevant factors and its decision contains no clear error of judgment, we will not substitute our judgment. *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

■ Although the petitioners' arguments are set forth in great detail and are extremely technical, we believe the issues are capable of a less complex response. First, the petitioners argue that the EPA permit is based on clearly erroneous findings of fact and conclusions of law in three ways. The petitioners claim that the EPA permit inappropriately incorporates provisions of the Missouri permit and that the Missouri permit is not binding on the facility's landowner— Atlas Powder Company. The petitioners, however, waived these arguments by failing to raise them during the comment period, at the public hearing, or before the Environmental Appeals Board. 40 C.F.R. § 124.-19(a), (e) (1992); 40 C.F.R. § 124.13 (1992); *see also Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.,* 435 U.S. 519, 558, 98 S.Ct. 1197, 1219, 55 L.Ed.2d 460 (1978); *McKart v. United States,* 395 U.S. 185, 193, 89 S.Ct. 1657, 1662, 23 L.Ed.2d 194 (1969). The petitioners also assert that the EPA permit referred to incorrect sections of the Missouri permit, and therefore, does not regulate the storage/feed

---

1. The Missouri Department's portion of the permit is currently on appeal in the Missouri courts.

handling building. We reject this argument as it addresses no more than a typographical error which was corrected under the permit modification provisions of 40 C.F.R. § 270.42 (1988).

■ Second, the petitioners argue that the EPA's determination that there was sufficient geological and hydrological information is based on clearly erroneous findings of fact and conclusions of law for four reasons. The petitioners contend that there is no evidence that construction design details or specifications have been submitted to the EPA as required by 40 C.F.R. § 270.23(a)(2) (1992). The petitioners, however, waived this issue by failing to raise it during the comment period or before the Environmental Appeals Board. 40 C.F.R. § 124.19(a), (e); 40 C.F.R. § 124.13; *see also Vermont Yankee Nuclear Power Corp*, 435 U.S. at 558, 98 S.Ct. at 1219; *McKart*, 395 U.S. at 193, 89 S.Ct. at 1662. The petitioners also allege that Atlas submitted only preliminary studies in violation of 40 C.F.R. §§ 264.601 and 270.-23(b) (1992), there is no evidence that Atlas has demonstrated that the storage/feed handling building will comply with federal performance standards, and an Atlas environmental report contains inapplicable information and is not a detailed "geological assessment." In making its decision to issue the permit, the EPA had access not only to the information contained in the permit application, but also to reports that contained a substantial amount of information about the environmental conditions at and surrounding the Atlas facility. The EPA noted that the storage/feed handling building would pose far less risk of impacting ground water than a land disposal facility, which would have justified a more extensive characterization. The storage/feed handling building is an enclosed structure that will be used for waste treatment, not long-term storage. The permit specifically limits the amount of waste that may be treated, and the length of time that waste may be stored. The permit also requires that the containment area floor be made of concrete (free of cracks or gaps), that the floor be coated with an acid and thermal resistant sealant to prevent migration of explosive materials into joints and pores, and that a four inch curb be built around the building perimeter. The permit requires daily inspection of the containment area, and if cracks, leaks, or spills are discovered, the permit requires immediate repair. After carefully reviewing the record before us and the EPA's conclusions, we cannot say that the EPA failed to consider the relevant factors or that its decision to issue the permit was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A).

■ Third, the petitioners argue that the EPA could not have sufficiently evaluated the quality of existing ground water because the permit application did not contain any ground water monitoring data from on-site wells and the EPA has acknowledged that ground water contamination exists. The EPA reviewed ample ground water quality information, including an exhaustive, earlier report. Thus, we cannot say that the EPA failed to consider the relevant factors or that its decision to issue the permit was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *See* 5 U.S.C. § 706(2)(A).

■ Finally, the petitioners argue that the permit application itself identifies risk to human health because it authorizes the handling and incineration of nitroglycerin at rates approaching 150 pounds per hour. As we stated earlier, we are concerned only with the EPA permit, not the Missouri permit which addresses the safety of the incinerator's operation. Regardless, we reject this argument because the EPA permit contains requirements to insure that the explosives are handled safely.

We deny the petition for review.